# Exhibit 6



# United States Department of the Interior

NATIONAL PARK SERVICE
Environmental Management Program
1050 Walnut, Suite 220
Boulder, CO 80302

IN REPLY REFER TO:

**Memorandum**

To: Ernie Quintana, National Park Service, Midwest Region Director  *Ernest Quint* 4-8-2008

From: Greg Nottingham, Remedial Project Manager

Through: John Debo, Superintendent, Cuyahoga Valley National Park  *Concur J.D.* 4-3-08

Date: March 27, 2008

Subject: EE/CA Approval Memorandum, Jaite Paper Mill Site, Cuyahoga Valley National Park

This memorandum documents the decision to conduct an Engineering Evaluation/Cost Analysis (EE/CA) for the Jaite Paper Mill Site (Site) located in Cuyahoga Valley National Park (CUVA), Ohio. This memorandum was prepared in accordance with the *Comprehensive Environmental Response, Compensation, and Liability Act* (CERCLA), *National Oil and Hazardous Substances Pollution Contingency Plan* (NCP) (40 C.F.R. Part 300) and U.S. EPA's *Guidance on Conducting Non-Time-Critical Removal Actions Under CERCLA* (OSWER Publication 9360.0-32, August 1993).

Background

The approximately 24-acre Jaite Paper Mill Site (Site) is located near the middle of CUVA, approximately 15 miles south of the city of Cleveland. It is located just off the east bank of the Cuyahoga River near its confluence with Brandywine Creek at Brecksville, Ohio. The Jaite Paper Mill is a 123,000 square foot building complex that began operations in 1905 and ended operations in 1984. In 1985, the Site became part of CUVA.

At peak production, the mill produced eight tons of paper (used mostly for packaging) per day. A wide variety of materials were stored, used, and produced on-site, including but not limited to: petroleum products, polychlorinated biphenyls (PCBs), solvents, industrial wastewater, and an unknown variety of solid wastes. Underground storage tanks (USTs) were used on-site, and waste piles were created on the ground surface south and west of the mill, including one large (approximately 1.5 acres) dump site on the far western end of the Site. Subsurface vaults and pits also were used at the Site, as were three wastewater treatment ponds.

To date, several potential contaminant sources have been removed from the Site, including PCB capacitor banks, USTs, and drums containing hazardous substances. In a 2004 Site Investigation, over 150 samples were collected from surface and subsurface soil, sediment, pond water, tank liquids, and groundwater. A wide variety of contaminants were analyzed, including volatile organic compounds (VOCs), semi-volatile organic compounds (SVOCs), metals, PCBs, pesticides, and herbicides. Dozens of individual contaminants from these classes of compounds were detected at various locations and in multiple media throughout the Site. Many of these analytes were detected at concentrations that exceeded ecological and human health screening level criteria (SLC) for the Site.

The National Park Service (NPS) has reviewed the data from the 2004 Site Investigation and has determined that a Non-Time-Critical Removal Action should be undertaken to address the current and potential threats to public health, welfare, and the environment at the Site. In addition, NPS has identified several potentially responsible parties (PRPs) that were previous owners, operators, generators, or transporters at the Jaite Mill Site and, consequently, NPS plans to utilize its enforcement authorities in an attempt to obtain cost avoidance and/or cost recovery in relation to the response activities at the Site.

Use of Removal Action Authority

Pursuant to section 104(a)(1) and (b)(1) of CERCLA, 42 U.S.C. § 9604(a)(1) and (b)(1), whenever there is a release or substantial threat of a release of a hazardous substance into the environment, the President is authorized to act, consistent with the NCP, to remove or arrange for the removal of such hazardous substance or take any other response action, including appropriate investigations, deemed necessary to protect public health or welfare or the environment. Most of the President's section 104 removal action authority with respect to NPS-managed land (including the authority to perform the Site EE/CA and related removal action that is the subject of this memorandum) has been delegated to the Secretary of the Department of the Interior (DOI) pursuant to Executive Order 12580, 52 Fed. Reg. 2923 (1987), and further delegated to NPS by DOI Departmental Manual Part 207 Chapter 7.

The NCP at 40 C.F.R. § 300.415(b)(2) establishes the criteria for initiating a removal action. The following section 300.415(b)(2) criteria support the determination to conduct a removal action at the Site:

> *(i) Actual or potential exposure to nearby human populations, animals, or the food chain from hazardous substances or pollutants or contaminants:*
>
> The 2004 Site Investigation found dozens of individual analytes from the classes of compounds described above to be present throughout the Site in soil (surface and subsurface), sediment (inundated and no-longer-inundated), groundwater, pond water, and tank liquids. It also revealed areas at the Site where screening levels were exceeded for numerous contaminants: 14 metals, two PCBs, three pesticides, and two SVOCs were found at high concentrations in soil; 13 metals, three PCBs, nine herbicides, four SVOCs, and one VOC were found at high concentrations in sediment; nine metals and two Aroclors were found at high concentrations in groundwater; and seven metals and one SVOC were found at high concentrations in pond water and tank liquids. Many of the contaminants found are classified as CERCLA hazardous substances including, but not limited to, Aroclor 1248, Aroclor 1260, benzo(a)pyrene, naphthalene, xylene, DDE, DDT, chlordane, dieldrin, endrin aldehyde, heptachlor epoxide, arsenic, chromium, copper, lead, mercury, and zinc.
>
> The Site is located on both sides of the highly used CUVA "towpath" trail (a walking/biking trail). Although the building complex and some adjacent land are fenced, most of the Site remains accessible to hikers/walkers on the towpath trail. Even the fenced area is accessible to trespassers through several holes in the fence.
>
> The first wastewater pond is perennially full of water and is attractive to birds and other animals.
>
> *(ii) Actual or potential contamination of …sensitive ecosystems:*
>
> See first paragraph under (i) above regarding the contamination at the Site. Units of the National Park System are considered sensitive ecosystems. See, e.g., National Park Service Organic Act, 16 U.S.C. § 1 (National Park System units shall be managed "to conserve the scenery and the natural and historic objects and the wildlife therein and to provide for the enjoyment of the same

in such manner and by such means as will leave them unimpaired for the enjoyment of future generations").

*(iv) High levels of hazardous substances or pollutants or contaminants in soils largely at or near the surface, that may migrate:*

In soil samples near the waste piles south and west of the building complex, fourteen metals, two PCBs, three pesticides, and two SVOCs were found at concentrations that exceeded soil screening levels; except for three metals, all of these analytes are classified as CERCLA hazardous substances. Of the 21 contaminants just mentioned, 11 also were found in groundwater at concentrations that exceeded groundwater screening levels. At all three soil sampling areas, contaminants found at high levels in soil also were found at high levels in nearby groundwater. This is true for three metals at the southern waste pile area, five metals at the central waste pile and mounds area, and nine metals and two Aroclors (1248 and 1260) at the larger dump site area. This data suggests that contaminants at the Site are migrating from soil to groundwater.

In sediment samples from the three ponds east of the building complex and towpath trail, 13 metals, three PCBs, nine herbicides, four SVOCs, and one VOC were found at concentrations that exceeded sediment screening levels. Except for three of the metals, all of these analytes are classified as CERCLA hazardous substances. Contaminants found in this area are more numerous and may be more hazardous than those in the waste pile areas. Groundwater wells were not installed in this area and are needed to determine if contaminants in the sediments in this area are migrating to groundwater.

*(v) Weather conditions that may cause hazardous substances or pollutants or contaminants to migrate or be released:*

The Site is located on the natural floodplain between the Cuyahoga River and Brandywine Creek. Although the flooding frequency in this area has been altered (i.e., decreased) from its presumed approximately annual cycle by the creation of the pad for the buildings, the gradual raising of the topography by on-site disposal of solid wastes over the decades, and the regulation of the Cuyahoga River upstream, the Site can and does still flood during large rain events. In July 2003, a 10 to 25-year event on the Cuyahoga River and a near100-year event on Brandywine Creek led to nearly all of the building complex and much of the adjacent land (including contaminated soil and some waste piles) being inundated with water. During such events, migration and release of wastes or contaminated soils through erosion is very possible. Additionally, given that the Site is tightly bounded by the river and the creek, one or both of the channels eventually will migrate through the Site, either gradually or suddenly, causing Site contaminants to migrate downstream.

Based upon these considerations, it has been determined to be appropriate to use removal action authority at the Site to investigate, abate, prevent, minimize, stabilize, mitigate, and/or eliminate the release or threat of release of hazardous substances at or from the Site. NPS has determined that a removal action is appropriate at the Site and that a planning time of at least six months exists before on-site activities will be initiated. Therefore, the NCP at 40 C.F.R. § 300.415(b)(4) mandates that an EE/CA (or its equivalent) be conducted. An EE/CA determines the nature and extent of contamination, assesses the risk posed to human health and ecological receptors from the contamination, identifies and evaluates removal action alternatives to address unacceptable risks, and recommends a removal action alternative that best meets the evaluation criteria.

EE/CA Implementation and Funding

NPS has received funding from the DOI Central Hazardous Materials Fund (CHF) to implement the Site EE/CA. Upon approval of this action, the Site EE/CA will be implemented.

Approval

Based upon this analysis, please indicate your concurrence or non-concurrence with the approach of conducting an EE/CA and removal action at the Jaite Paper Mill Site as presented in this memorandum. If you have any questions, please contact me at 303-415-1483.

I Concur

_____       _4-8-2008_____
Ernest Quintana      Date
National Park Service
Midwest Region Director

I Do Not Concur

_____       _____
Ernest Quintana      Date
National Park Service
Midwest Region Director

N:\CASES\Jaite Mill\EECA\Approval Memo\EECA Approval Memo 3_2008.doc

4